UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FILED**

**AUG 1 0 2006**

CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

In re:

SAMUEL I. BARBER.

Case No. 6:03-bk-11735-ABB
Chapter 7

Debtor.

_____/

JAMES C. ORR. CHAPTER 7 TRUSTEE.

Plaintiff,

vs.

Adv. Pro. No. 6:05-ap-00078-ABB
Adv. Pro. No. 6:05-ap-00247-ABB
[Consolidated]

KENOFF & MACHTINGER. L.L.P. and
KENOFF & MACHTINGER, A California
General Partnership,

Defendants.

_____/

## MEMORANDUM OPINION

This matter came before the Court on the Plaintiff's Motion for Summary Judgment and Memorandum of Law[1] ("Plaintiff's Summary Judgment Motion") filed by James C. Orr. the Chapter 7 Trustee and the Plaintiff herein ("Plaintiff" or "Trustee"), and the Defendant's Motion for Summary Judgment and Memorandum of Law[2] with its supporting Declaration of Leonard S. Machtinger[3] (collectively, "Defendant's Summary Judgment Motion") filed by Kenoff & Machtinger. LLP and Kenoff & Machtinger. A California General Partnership, the Defendants herein (collectively, the "Defendant"). Also pending is the Amended Plaintiff's Motion to Amend Complaint filed by the

---

[1] Doc. No. 27 (docket for Adversary Proceeding No. 6:05-ap-00247-ABB).
[2] Doc. No. 29.
[3] Doc. No. 28.

Plaintiff and the Amended Complaint to Avoid Preferential Transfer as to Personal Property and Real Property.[4]   The parties seek a final adjudication of these consolidated adversary proceedings.

An evidentiary hearing was held on May 25, 2006 at which the Defendant and counsel for the Plaintiff appeared.   The Plaintiff was granted leave to amend his Motion to Amend Complaint[5] in order to attach to it and file an amended complaint.   The parties were granted twenty-one days to file responses and supplemental briefs.   The Plaintiff filed his Amended Plaintiff's Motion to Amend Complaint ("Motion to Amend") accompanied by his Amended Complaint to Avoid Preferential Transfer as to Personal Property and Real Property.[6]   The Defendant filed an Opposition to the Motion to Amend.[7]   The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Undisputed Facts*

There are no material facts in dispute, as evidenced by the parties' Joint Stipulation of Facts[8] and their statements made at the May 25, 2006 hearing.   The facts are as follows:

The Defendant obtained a final, non-appealable California state court judgment against Samuel I. Barber, the Debtor herein ("Debtor") in the amount of $102,222.78 on

---

[4] Doc. No. 43.
[5] Doc. No. 39.
[6] Doc. No. 43.
[7] Doc. No. 44.
[8] Doc. No. 24.

June 24, 2003 (the "Judgment").[9]  The Defendant is not an insider of the Debtor.  The Judgment was recorded on June 30, 2003 in the Official Records Book (Book 4961, Page 1910) for Brevard County, Florida (the Debtor's county of residence).  A certified copy of the Judgment was recorded on July 8, 2003 in the Official Records Book (Book 06986, Page 3396-3398) for Orange County, Florida.  The Affidavit of Robert J. Winicki ("Affidavit") setting forth the name and address of the Defendant as required by the Florida judgment recordation statute was attached to and filed simultaneously with the Judgment in Orange County.  The Defendant, as of July 8, 2003, held a properly perfected judgment lien on any interest of the Debtor in real property located in Orange County.  The Defendant filed a Judgment Lien Certificate ("Certificate") with the Florida Secretary of State on July 10, 2003.[10]

Samuel I. Barber, Sr., the Debtor's father (the "Decedent"), died testate on July 23, 2003.[11]  The Decedent devised all of his "property, be it realty, personalty, intangible property, claims . . . or proceeds arising out of any action for Wrongful Death arising from the circumstances of my death" to his wife Isabel B. Barber pursuant to the Last Will and Testament of Samuel I. Barber, Sr. (the "Will").[12]  The Debtor and his two siblings, Peter M. Barber and Deborah D. Barber (all three being children of the Decedent), were named as alternate beneficiaries in Paragraph 8 of the Will in the event the Decedent's spouse predeceased the Decedent or they died simultaneously.  The Decedent devised all of his assets to the Debtor and his two siblings, as alternate devisees, in equal shares per stirpes.  The Will contains no restraints on the vesting of

---

[9] Plaintiff's Exh. No. 2 (Doc. No. 43).
[10] Plaintiff's Exh. No. 3 (Doc. No. 43).
[11] Plaintiff's Exh. Nos. 4, 5, 7 (Doc. No. 43).
[12] Plaintiff's Exh. No. 4 (Doc. No. 43).

devises to the alternate beneficiaries or intent to postpone the vesting, other than the conditions set forth in Paragraph 8 (requiring the spouse to predecease the Decedent or die simultaneously with him).

Isabel B. Barber predeceased the Decedent. The Debtor and his siblings, as the alternate devisees, were entitled to distribution of the Decedent's assets pursuant to Paragraph 8 of the Will. The Decedent owned in fee simple real property located in Orange County at 2209 Howard Drive, Winter Park, Florida (the "Property") at the time of his death. The Debtor and his siblings each inherited a one-third ownership interest in the Property by operation of the Will. The devises of the Decedent's assets to the Debtor and his siblings vested upon the Decedent's death pursuant to Florida statutory law. The Defendant's perfected judgment lien automatically attached to the Debtor's one-third interest in the Property on July 23, 2003.

The Debtor filed a Chapter 7 bankruptcy case on October 7, 2003 (the "Petition Date"). His interest in the Property constituted non-exempt property of the estate on the Petition Date which is subject to administration by the Trustee. The Trustee sought authority to sell the bankruptcy estate's one-third interest in the Property free and clear of any encumbrances, including the judgment lien asserted by the Defendant. An Order was entered on April 9, 2004 allowing the Trustee to sell the estate's interest in the Property free and clear of liens, with the Defendant's disputed lien to attach to the proceeds of sale.[13] The Trustee sold the Debtor's interest in the Property for $55,000.00 and the Plaintiff received net proceeds of sale of $52,052.21. The Defendant's lien claim attached to the net sale proceeds. The Trustee is holding the funds in his trust account.

---

[13] Main Case Doc. No. 29.

4

The Debtor was insolvent at the time the judgment lien attached to his interest in the Property on July 23, 2003. The attachment caused the Defendant's judgment lien to fully encumber the Debtor's interest in the Property. The attachment places the Defendant in a position to take the Debtor's entire one-third interest in the Property. The Defendant would be entitled only to a pro rata distribution of an unsecured claim in the amount of the Judgment if the attachment had not occurred. The attachment enables the Defendant to receive more than it would receive in a distribution of assets in this Chapter 7 case if the attachment of the judgment lien had not occurred.

The parties disagree as to when a transfer of an interest of the Debtor in property occurred for purposes of a § 547(b) preference determination. The Defendant contends a transfer occurred on July 8, 2003 when the Judgment was recorded. The Trustee contends a transfer occurred on July 23, 2003 when the Debtor acquired a one-third ownership interest in the Property. The issue is a legal issue and is discussed in detail hereinbelow. The Defendant has had sufficient opportunity to respond to all claims raised in Complaints I, II, and III and has filed extensive briefs in support of its position. The Defendant has not presented any evidence rebutting the presumption the Debtor was insolvent on and during the ninety days immediately preceding the Petition Date. The Defendant has not raised in its pleadings any preference avoidance defenses pursuant to § 547(c) of the Bankruptcy Code.

### Adversary Proceedings Instituted by Plaintiff

The Plaintiff timely instituted two adversary proceedings against the Defendant, Adversary Proceeding Numbers 6:05-ap-00078-ABB and 6:05-ap-00247-ABB (which were consolidated by Order entered on April 24, 2006), to determine what lien rights the

5

Defendant may hold and to avoid any such lien rights. The Plaintiff presents four alternative lien avoidance theories in his complaints. He alleges in his first Complaint (6:05-ap-00078-ABB) ("Complaint I") the recordation of the Certificate on July 10. 2003 constitutes a transfer of an interest of the Debtor in *real property* (the Debtor's one-third ownership interest in Property) within ninety days of the Petition Date and is avoidable as a preference pursuant to 11 U.S.C. § 547(b).

The Plaintiff alleges in his second Complaint (6:05-ap-00247-ABB) ("Complaint II"): (i) a lien arose in favor of the Defendant through a post-petition transfer by virtue of the entry of the probate Order[14] which is avoidable pursuant to 11 U.S.C. §§ 549 and 544: (ii) the filing of the Certificate on July 10. 2003 created a lien. pursuant to Florida statutory law. against all of the Debtor's *personal property*. including his inheritance rights. within ninety days of the Petition Date and is an avoidable preference pursuant to 11 U.S.C. § 547(b); and (iii) the Defendant's judgment lien is avoidable pursuant to 11 U.S.C. § 550 because it is unperfected (on the basis the Defendant allegedly did not include its address in the recorded Judgment pursuant to Florida state law).

### Plaintiff's Motion to Amend

The Plaintiff raises a fifth theory of relief against the Defendant in his proposed Amended Complaint ("Complaint III"). He contends in Complaint III the filing of the Affidavit and Judgment on July 8, 2003 created a judgment lien which attached to "the Debtor's undivided one-third interest in the Property thus inherited under the Will" on July 23. 2003 and such lien is avoidable as a preference pursuant to 11 U.S.C. § 547(b).[15]

---

[14] On May 18. 2004, the Probate Court for the Estate of Samuel I. Barber. Sr. entered an Order Determining Homestead Status of Real Property in connection with the Property.
[15] Complaint III at pp. 6-7.

Complaint III differs from Complaints I and II in that the previous Complaints focus primarily on the July 10, 2003 Certificate filing. Complaint III addresses the July 8, 2003 recordation of the Affidavit and Judgment and the attachment of the resulting judgment lien to the Debtor's interest in the Property. The Trustee concedes the Judgment was properly perfected on July 8, 2003, which date is outside of the 90-day preference look-back period. The Trustee focuses in Complaint III on the date of July 23, 2003 as the operative date for a § 547(b) preference analysis. The Trustee contends the Defendant's perfected judgment lien attached to the Debtor's interest in the Property on July 23, 2003 and such attachment constitutes an avoidable preferential transfer.

Complaints I and II put the Defendant on notice its judgment lien was subject to attack pursuant to 11 U.S.C. § 547(b) and other provisions of the Bankruptcy Code.[16] The Defendant knew even before Complaints I and II were filed its judgment lien was subject to attack, as evidenced in the Order Approving Sale of Property of the Estate Free and Clear of Liens Pursuant to 11 U.S.C. § 363(f).[17] Complaints I and II contain facts, transactions, and occurrences pled with particularity. Complaint III does not interject a new set of facts or occurrences. It focuses on events that the Plaintiff did not focus on in Complaints I and II. All three Complaints share a common core of operative facts. The claims asserted in Complaint III arose out of the conduct, transactions, and occurrences set forth or attempted to be set forth by the Plaintiff in Complaints I and II. Defendant cannot claim undue surprise. Complaint III relates back to Complaints I and II and sets

---

[16] For example, Complaint II at p. 8 put the Defendant on notice the Plaintiff was attacking the Defendant's lien from a number of angles: "Defendant's recording of its Judgment resulted in an asserted lien against any interest the Debtor had in the Property, either as a beneficiary under the Will and the resulting Probate Estate, or as an undivided one-third interest owner of the Property upon Samuel I. Barber, Sr.'s death."

[17] The Order at Paragraph 3 states: "The sale of the Property shall be free and clear of the disputed claims held by Kenoff and Machtinger, L.L.P. against the Property. The disputed claims, being in bona fide dispute, shall attach to the proceeds of the sale in accordance with 11 U.S.C. § 363(f)(4)."

forth a viable avoidance cause of action. The Plaintiff's proposed amendment is not futile. The Plaintiff's Motion to Amend is due to be granted and the claims set forth in Complaint III will be considered.

### *Lien Creation, Attachment, and Avoidance*

The operative events in this case relating to a preference analysis are the recordation of the Judgment and its accompanying Affidavit on July 8, 2003 in the Official Records Book for Orange County, Florida and the death of the Decedent on July 23, 2003. The Judgment was properly recorded pursuant to Florida statutory law and on July 8, 2003 the Defendant held a properly perfected judgment lien on any interest of the Debtor in real property located in Orange County. The Trustee concedes these facts.[18]

The only issue between the parties is when a transfer of an interest in the Debtor's property occurred, which is a legal issue. The Defendant contends the transfer occurred on July 8, 2003, which is outside of the ninety-day preference look-back period. The Trustee contends in Complaint III the transfer occurred when the Debtor's inheritance vested on July 23, 2003, which date is within the ninety-day period. As set forth in more detail in the Conclusions of Law herein, the Defendant's judgment lien was a general lien and did not attach to any specific real property interest until the Decedent died on July 23, 2003. The Debtor's one-third interest in the Property vested on July 23, 2003 and the judgment lien automatically attached to the Debtor's interest in the Property on that date.

The automatic attachment of the Defendant's judgment lien to the Debtor's interest in the Property on July 23, 2003 constitutes a transfer of an interest in Property pursuant to the Bankruptcy Code. The transfer is an avoidable preferential transfer based upon the claims contained in Complaint III. Such transfer was for the benefit of the

---

[18] Complaint III at ¶ 38.

8

Defendant, who is a creditor of the Debtor, on account of an antecedent debt owed by the debtor before such transfer was made. The transfer occurred while the Debtor was insolvent and was within ninety days of the Petition Date. The Plaintiff has established each of the necessary factual elements for avoidance of the transfer. No material facts are in dispute.

## CONCLUSIONS OF LAW

### *Plaintiff's Motion to Amend*

The Plaintiff seeks leave to amend his Complaints to include a new count addressing the July 8, 2003 recordation of the Judgment and Affidavit. The Plaintiff contends in Complaint III the July 8, 2003 recordation gave rise to a perfected judgment lien that attached to the Debtor's interest in the Property upon the Decedent's death on July 23, 2003. The Plaintiff contends the attachment of the lien on July 23, 2003 constitutes an avoidable preference pursuant to pursuant to 11 U.S.C. § 547(b). The Defendant objects to the Plaintiff's amendment request.

Federal Rule of Civil Procedure 15, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7015, governs the amendment of pleadings. An amendment may be allowed where the claim asserted in the amended pleading "relates back to the date of the original pleading." Fed. R. Civ. P. 15(c) (2005). An amendment relates back where "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. Pro. 15(c)(2). Relation back to the original pleading "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." Mayle v. Felix. ___ U.S. ____. 125 S. Ct. 2562.

9

2572, 162 L. Ed. 2d 582 (2005) (citations omitted). Allowance or denial of amendment is within the discretion of the court and "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Amendment is generally allowed absent undue surprise. Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993); Jackson v. Rockford Housing Authority, 213 F.3d 389 (7th Cir. 2000). "The critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." Moore v. Baker, 989 F.2d at 1131.

The original pleadings for a Rule 15 relation back analysis are the Plaintiff's Complaints I and II. Complaints I and II set forth with particularity facts and occurrences relating to: the Defendant's Judgment; the steps taken by the Defendant to domesticate the Judgment in Florida; recordation of the judgment in Orange County, Brevard County, and with the State of Florida; Judgment perfection issues; the Decedent's death and the terms of his will; the Debtor's interest in the Property; the Debtor's bankruptcy estate; and attachment of the judgment lien to the Debtor's interest in the Property. The Plaintiff sets forth alternative transfer avoidance theories pursuant to § 547 and § 549 in the original Complaints. The Plaintiff readjusts his focus in Complaint III on the July 8, 2003 and July 23, 2003 events. He sets forth in Complaint III recordation of the Judgment on July 8, 2003 gave rise to a perfected judgment lien that attached to the Debtor's interest in the Property upon the Decedent's death on July 23, 2003.

The Trustee concedes this case has followed a "tortured" procedural path and understandably the Defendant is frustrated. While Complaints I and II may have been unartfully drafted and failed to specifically focus on the July 8, 2003 and July 23, 2003

events, the claims contained in Complaint III cannot be a surprise to the Defendant. The Defendant was on notice through the sale of the Property and Complaints I and II its judgment lien was subject to attack as a preferential transfer pursuant to 11 U.S.C. § 547. Complaint III does not interject a new set of facts. It merely focuses on different dates in the event timeline and pinpoints July 23, 2003 as the operative date for preference analysis purposes. Complaints I, II, and III all share a common core of operative facts. The claims asserted in Complaint III arose out of the conduct, transactions, and occurrences set forth or attempted to be set forth by the Plaintiff in Complaints I and II. Complaint III relates back to Complaints I and II. Amendment of Complaints I and II as proposed by the Plaintiff in Complaint III is proper pursuant to Federal Rule of Civil Procedure 15(c) and the standards set forth in the applicable case law cited hereinabove. The Trustee's Motion to Amend shall be granted and the substantive claims of Complaint III shall be considered.

### *The Decedent's Will*

The Decedent died testate on July 23, 2003. The Will named the Decedent's spouse as the primary devisee and the Debtor and his two siblings as the alternate devisees. The Will conditioned the alternate devisees' right to inherit upon the Decedent's spouse predeceasing the Decedent or dying simultaneously with him. The Decedent's spouse predeceased the Decedent thereby triggering the alternate devisee provision of Paragraph 8 of the Will. All of the Decedent's property was devised to the alternate beneficiaries in equal shares per stirpes by operation of the Will.

Florida statutory law specifically delineates when a right to a devise vests: "The death of the testator is the event that vests the right to devises unless the testator in the

will has provided that some other event must happen before a devise vests." FLA. STAT. § 732.514 (2005). "The overwhelming weight of authority is to the effect that devises vest at the death of the testator unless there is a clear intent to postpone the vesting." Sorrells v. McNally, 105 So. 106. 110 (Fla. 1925).

The Will at Paragraph 8 imposed a condition precedent that the primary beneficiary predecease the Decedent or die simultaneously with him in order for the alternate devisees to inherit. That condition occurred. The Will contains no other provisions restricting or postponing the vesting of the alternate devisees' rights. The devise to the Debtor and his siblings of equal one-third shares in the Decedent's estate vested on July 23, 2003 pursuant to Florida Statute § 732.514.

The Debtor held no interest or right in the Decedent's estate prior to July 23, 2003. Being named as an alternate beneficiary in the Will did not bestow any property rights upon the Debtor and his siblings. Whalen v. Prosser. 719 So.2d 2, 5 (Fla. App. 1998). It is well-settled law in Florida that a beneficiary has only a "mere expectancy." Bedell v. Bedell, 523 So.2d 166, 167 (Fla. App. 1988). "There is no guarantee that the testator's estate will contain any assets at the time of a future death. Thus. prior to death, the hope of an inheritance is not sufficiently concrete to create a property right. The disappointed beneficiary only obtains 'vested' rights when the testator dies." Whalen v. Prosser, 719 So.2d at 5. The Debtor had only a mere expectancy prior to his father's death on July 23, 2003. Id.; Bedell v. Bedell. 523 So.2d at 167. He held no rights in property, real or tangible, by virtue of being named an alternate beneficiary in the Will. Id. The Debtor, as a devisee pursuant to Paragraph 8 of the Will, obtained a vested right in one third of the Decedent's estate on July 23, 2003. FLA. STAT. § 732.514.    He

acquired a one-third interest in his father's estate, including the Property, upon his father's death.

### The Defendant's Judgment

A judgment creditor must record a judgment in compliance with Florida statutory law in order to create a judgment lien on real property located in Florida:

> A judgment, order or decree becomes a lien on real property in any county when a certified copy of it is recorded in the official records or judgment lien record of the county, whichever is maintained at the time of recordation, provided that the judgment, order, or decree contains the address of the person who has a lien as a result of such judgment, order, or decree or a separate affidavit is recorded simultaneously with the judgment, order, or decree stating the address of the person who has a lien as a result of such judgment, order, or decree. A judgment, order, or decree does not become a lien on real property unless the address of the person who has a lien as a result of such judgment, order, or decree is contained in the judgment, order, or decree or an affidavit with such address is simultaneously recorded with the judgment, order, or decree.

FLA. STAT. § 55.10(1) (2006). A judgment lien on real property is a general lien extending to all property in existence at the time the lien is created and all property acquired by the judgment debtor during the life of the judgment. In re Owen, 961 F.2d 170, 172 (11th Cir. 1992), cert. denied, 506 U.S. 1022, 113 S. Ct. 659, 121 L. Ed. 2d 584 (1992) (citing Allison on the Ocean, Inc. v. Paul's Carpet, 479 So.2d 188, 190-91 (Fla. 3d DCA 1985).

The Defendant's Judgment, through the simultaneous filing of the Judgment and Affidavit on July 8, 2003, became a judgment lien extending to all real property owned by the Debtor located in Orange County and all property acquired by him during the life of the Judgment. FLA. STAT. § 55.10(1); In re Owen, 961 F.2d at 172. The Debtor did not have an ownership interest in any real property in Orange County on July 8, 2003, but he acquired an interest in the Property subsequently on July 23, 2003. The

Defendant's judgment lien automatically attached to the Debtor's one-third ownership interest in the Property on July 23, 2003. Id.

*11 U.S.C. § 547(b)*

Section 547(b) of the Bankruptcy Code provides a trustee may avoid as a preferential transfer "any transfer of an interest of the debtor in property" made by a debtor to a non-insider within ninety days of the petition date and where the other criteria set forth in subsections (b)(1), (2), (3), and (5) exist. 11 U.S.C. § 547(b) (2005). The term "transfer" is defined broadly. 5 COLLIER ON BANKRUPTCY ¶ 547.03[1], at 547-15 (15th Ed. Rev. 2005). It includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54) (2005). Section 547(e)(3) provides "a transfer is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3) (2005).

A trustee carries the burden of establishing the avoidability of a transfer pursuant to § 547(b) and a defendant carries the burden of establishing the nonavoidability of the transfer pursuant to § 547(c). 11 U.S.C. § 547(g). A debtor is presumed to have been insolvent on and during the ninety-day period preceding the petition date. 11 U.S.C. § 547(f). The Defendant has offered no evidence to rebut the insolvency presumption of § 547(g) and has presented no nonavoidability defenses pursuant to § 547(c).

The parties' only disagreement involves the legal issue of when a "transfer" of an interest of the Debtor in property occurred. The Defendant contends the recordation of the Judgment on July 8, 2003 constitutes a transfer and such transfer is immune from

14

attack because it falls outside the ninety-day look-back period. The ninetieth day from the Debtor's Petition Date was July 9, 2003. The Defendant, a non-insider, obtained its judgment lien on July 8, 2003, which date is ninety-one days prior to the Petition date.[19] The Trustee contends the attachment of the Judgment to the Debtor's interest in the Property on July 23, 2003 constitutes a transfer for preference avoidance purposes.

The Defendant's acquisition of a judgment lien is not the operative event for § 547(b) purposes. The Defendant merely acquired a general lien on July 8, 2003. FLA. STAT. § 55.10(1); In re Owen, 961 F.2d at 172. The Debtor had no interest in the Property when the Judgment was recorded, so there could be no transfer of any interest of the Debtor in such Property on July 8, 2003. 11 U.S.C. § 547(e)(3); In re Moses, 256 B.R. 641, 645 (B.A.P. 10th Cir. 2000) (stating a fundamental inquiry for a §547(b) determination is whether the debtor had a legal or equitable interest in the transferred property). The operative event was the attachment of the judgment lien to the Debtor's interest in the Property on July 23, 2003. The Debtor's interest in the Property vested on his father's death (pursuant to Florida Statute § 732.514 and the terms of the Will) and the judgment lien automatically attached to his one-third interest in the Property. In re Owen, 961 F.2d at 172. "A judgment lien is a general lien which attaches to any property currently owned by the judgment debtor. It springs to life the minute the debtor acquires property to which it attaches." Id. (citations omitted).

The attachment of the judgment lien fully encumbered the Property and constitutes a transfer of the Debtor's interest in the Property pursuant to § 547(b). 11

---

[19] The ninety-day look-back period of § 547(b)(4)(A) is calculated by counting backwards ninety days from the petition date, but excluding the petition date. In re Toy King Distrib., Inc., 256 B.R. 1, 95 (Bankr. M.D. Fla. 2000); Fed. R. Bankr. Pro. 9006(a) (2005).

U.S.C. § 101(54): In re Cooper. 202 B.R. 319 at 323: 5 COLLIER ON BANKRUPTCY ¶ 547.03[1][a]. at pp. 547-18. The transfer occurred within ninety-days of the Petition Date. Such transfer was for the benefit of the Defendant, who is a non-insider creditor of the Debtor. on account of an antecedent debt owed by the Debtor before such transfer was made. The transfer occurred while the Debtor was insolvent.

The Debtor's interest in the Property became property of the estate on the Petition Date pursuant to § 541(a)(1). The judgment lien fully encumbers the one-third ownership interest in the Property. The attachment of the judgment lien changed the Defendant's status from an unsecured creditor to that of a secured creditor holding a lien on the Debtor's one-third interest in the Property. The transfer enables the Defendant to obtain a greater share of the assets of the Debtor than it would receive in this Chapter 7 case if the attachment of the judgment lien had not occurred. The Plaintiff has established each of the necessary factual and legal elements for avoidance of the transfer pursuant to § 547(b). The judgment lien encumbered the proceeds of sale of the Property is due to be set aside.

### Summary Judgment

The Plaintiff seeks avoidance of the judgment lien.   The Defendant seeks recognition and enforcement of its judgment lien against the proceeds of sale of the Property. The parties each seek summary judgment. Granting summary judgment is appropriate "if the pleadings, depositions. answers to interrogatories. and admissions on file. together with the affidavits. if any. show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2005) (made applicable to bankruptcy proceedings by Fed. R. Bankr. P.

7056).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

There are no genuine issues of material fact in dispute.  The only legal issue in dispute is when a transfer of an interest of the Debtor in property occurred.  Such issue has been determined in favor of the Plaintiff: the transfer took place on July 23, 2003. The Trustee presents a viable preference avoidance claim in Complaint III.  He has established each of the factual elements of § 547(b).  He has demonstrated he is entitled to judgment as a matter of law pursuant to 11 U.S.C. § 547(b).  The Defendant's judgment lien, which attached to the proceeds of sale of the Property, is avoidable pursuant to 11 U.S.C. § 547(b).  The Plaintiff is entitled to summary judgment on Complaint III.  The July 23, 2003 transfer is an avoidable preferential transfer pursuant to 11 U.S.C. § 547(b) and the Defendant's judgment lien shall be set aside.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Plaintiff's Motion to Amend and Summary Judgment Motion are hereby **GRANTED**; and it is further

**ORDERED, ADJUDGED, AND DECREED** that the Defendant's Summary Judgment Motion is hereby **DENIED**.

A separate judgment in favor of the Plaintiff and against the Defendant consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 10th day of August, 2006.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge